# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Zagel | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 96 CR 380 - 2 | **DATE** | 7/24/2001 |
| **CASE TITLE** | UNITED STATES vs. DONALD RAY BENNETT | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] **Motion (158-1) to withdraw plea of guilty is denied.**

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | JUL 26 2001 | |
| | Notified counsel by telephone. | | date docketed | 174 |
| ✓ | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | FILED FOR DOCKETING | | |
| | Copy to judge/magistrate judge. | 01 JUL 25 PM 5: 19 | date mailed notice | |
| DW | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | No. 96 CR 380 |
| | Judge James B. Zagel |
| DONALD RAY BENNETT, | |
| Defendant. | |

## MEMORANDUM OPINION AND ORDER

Donald Ray Bennett has moved to withdraw his plea of guilty on the grounds that it was coerced. Fed. R. Crim. P. 32(e).

Bennett and Edward Landaw were indicted for engaging in a scheme to defraud perpetrated from inside the walls of a federal prison. Both men entered pleas of guilty on January 5, 2000. Bennett plead first and Landaw plead second. At his plea, Bennett swore that his plea was voluntary--not the product of threats or force. Ordinarily, that would be the end of the matter, but Bennett made allegations that are a little off the beaten path. The government took the position that it would not exchange any benefit to the co-defendant Landaw in exchange for a plea of guilty unless Bennett also plead guilty. Landaw could plead guilty, but he would have to do so without any promise from the government. Bennett testified that--to gain a better deal for himself--Landaw made threats against "my physical safety" and threatened to inculpate Bennett's sister in the scheme. Bennett said he was afraid of Landaw doing physical harm to him. The government bears responsibility for this because it put Landaw in the position of having to coerce a plea from Bennett in order to help himself. At the time I took Bennett's plea, I was not aware of the

condition in Landaw's plea agreement. But the condition did appear in the written agreement that Landaw signed, so I knew of it shortly after Bennett completed his plea. Indeed, the odds are that when I knew of it, Bennett was still in my courtroom lockup. Perhaps I should have brought him back to inquire further into the basis for Bennett's plea. Other circuits have said this should be done. *United States v. Abbott*, 241 F.3d 29, 33-34 (1st Cir. 2001); *United States v. Caro*, 997 F.2d 657, 659-60 (9th Cir. 1993); *United States v. Carr*, 80 F.3d 413, 416 (10th Cir. 1996); *United States v. Gonzalez-Vazquez*, 219 F.3d 37, 43 (1st Cir. 2000). Because I did not do so at the plea, I thought I was obligated, by reason and principle, to hold a full evidentiary hearing on the issue (which is what the reported cases say I should do) to determine whether the plea was involuntary. But see *United States v. Farley*, 72 F.3d 158, 164 & n.5 (D.C. Cir. 1995) (rejecting rule that district court must make special voluntariness inquiry when faced with a wired plea, but noting that district court should be informed of wired plea).

In a "package deal" case (and perhaps only in package deal cases), Bennett may not be so deeply bound by his sworn assertions at the plea. I think I am entitled to determine whether his responses to my questions were true, and to rely on them if I find they were. But if a more searching inquiry is to be made in wired pleas, then perhaps the strong presumption of verity, see *United States v. Pike*, 211 F.3d 385, 389 (7th Cir. 2000), given to the standard answers in a Rule 11 colloquy does not apply. In other words, if the standard Rule 11 colloquy is not sufficient to determine the voluntariness of a package deal plea, then perhaps I ought not hold Bennett to his admissions. However, I note that even in package deal cases, some courts do not give the defendant this benefit. *United States*

*v. Lampazianie*, 251 F.3d 519, 524 (5th Cir. 2001). Nevertheless, I consider this a case in which the defendant must show a "fair and just reason" for withdrawal of a plea but does not bear the heavy burden of persuasion imposed in the ordinary case, such as *United States v. Messino*, 55 F.3d 1241, 1248 (7th Cir. 1995).

Bennett called Landaw's lawyers to the stand, and Landaw waived his privilege with respect to their discussions save for matters of no great significance here. Both Sarah Ellis and Daniel Hesler stated that they had told Landaw that he was not going to get a deal unless Bennett plead guilty. Landaw did tell them that he would talk to Bennett. Landaw never told either lawyer that he would pressure or coerce Bennett. He did relate, in a later conversation that Bennett (who had told Hesler that he, Bennett, would plead guilty) felt some moral compunction to go along with the deal. Hesler believed that he and Landaw did discuss using moral suasion.

These discussions occurred in a context that is worth considering. Bennett has committed four bank robberies. He is currently serving a long sentence for the last of them. He is sixty years old and his release date on his existing sentence is 2032 when, if alive, he will be in his nineties. A finding of guilt on the current charges and an additional sentence has little practical meaning, if any, to Bennett, who testified: "I am going to spend the rest of my life in prison." Landaw, on the other hand, might emerge from prison and he could use a form of moral suasion with Bennett whose plea of guilty does not harm Bennett and would help Landaw. Even Bennett's acquittal would not help Bennett but would harm Landaw. This moral suasion is not irresistible but it has some force. One can also infer that Bennett was a leader of the scheme and Landaw the follower. Bennett prepared an affidavit for Landaw's lawyers. The affidavit was to be used to support a

motion for severance by Landaw's lawyers, but Bennett withdrew his permission to file it.[1] I have not seen the affidavit, but I can reason that the affidavit exculpated Landaw as a leader and organizer of the offense charged.[2] And I further infer that Bennett was able to make such a statement only because he was more deeply implicated in the offense than Landaw. These inferences serve to corroborate the direct testimony of Ellis that Bennett had stated to her that "he was the one that set up the entire calling system...the person in charge of recruiting people that lived at Landaw's various houses...he essentially ran the scheme...."

At bottom, neither of Landaw's lawyers gives evidence that Landaw did coerce a plea of guilty. Indeed, Hesler testified that when Bennett agreed to plead guilty, Hesler said he was "extremely agreeable. I was delightfully surprised." What the lawyers do confirm is that Landaw did have a motive to coerce and knew of it.

Bennett's own lawyer, Victor Pilolla, did verify that Bennett had, most of the time, said that he wanted to go to trial. Promptly after the plea, Bennett said he wanted to withdraw his plea. And, even when he did plead guilty, he was not happy with parts of the agreement, particularly being characterized as a leader and organizer. The transcript of the plea agreement shows that Bennett did not simply give rote answers to my questions,

---

[1] The affidavit was filed under seal during the hearing on Bennett's motion to withdraw his guilty plea.

[2] Bennett testified that Hesler and Ellis gave the affidavit to the prosecutor. He claimed personal knowledge of this fact but he had none. He had only the conclusion he drew from the fact that the prosecutor was willing to concede, in the plea bargain, that Landaw was not a leader or organizer.

4

he did voice his disagreement with some elements of statement of facts.[3] Pilolla testified that Bennett never told him that he was being forced to enter his plea of guilty and, though dissatisfied with the substance of the agreement, "went ahead and he plead guilty anyhow." Pilolla knew of no reason to doubt that Bennett told the truth when he said to me that no one had threatened him. Pilolla's testimony does not rule out the possibility that behind-the-scenes coercion occurred, but it does not support the proposition that it did.

This leaves the testimony of Landaw and Bennett. Landaw swore that he tried to persuade Bennett to plead guilty "whatever way I could." He also said that he "hollered" at Bennett, that his lawyers told him to work on Bennett and that he told his lawyers he had put pressure on Bennett. And Landaw felt pressure because he did not think his lawyers were ready for trial if he wanted trial. This was not bad testimony for Bennett, but Landaw also denied much that would have helped Bennett here. He did not ever threaten Bennett with physical harm. He never meant physical harm for Bennett, though he agreed that Bennett might have thought this was so. There may have been two inmates who spoke to Bennett on Landaw's behalf, but Landaw did not send them. Landaw tried to persuade Bennett that it would serve Bennett's interest to plead. He succeeded sometimes, but then

---

[3] Bennett, in response to the prosecutor's statement of facts, said "He said some things about me being able to control Landaw or his houses, something like that, me and Landaw controls his house. I had no control over Mr. Landaw or his property, his houses...." In reply, the prosecutor stated that the government did not disagree, "they were Mr. Landaw's houses and not Mr. Bennett's." I told Bennett, "[The government] is not alleging that you controlled it," to which Bennett replied, "Right." Report of Proceedings, January 5, 2000 at 24-25.

5

Bennett would change his mind. Landaw did not corroborate Bennett's assertion of threats against Bennett or Bennett's sister.[4]

Bennett sought to minimize the lack of corroboration of explicit coercion by citing his mental status which, he says, is a schizophrenic form of disorder, paranoid type. This statement (not supported by medical evidence) was offered to show that what normal persons might not consider threatening would be considered, by Bennett, as threatening.

Of the factors that I am to consider, some of them are of no real value to Bennett. They weigh in favor of the prosecution. In light of the unprivileged statement to Sarah Ellis, there can be no viable claim of actual innocence. There is prejudice to the government which must reassemble its evidence and undergo the cost of prosecution, although, given the statement to Ellis, the level of prejudice is fairly low.

What Bennett can rely on is the fact that he sought withdrawal of his plea in a particularly prompt manner, his claim of mental impairment and his claim of actual coercion.

I do not believe that Bennett is mentally impaired in a way that supports his claim of coercion, I do not believe that Landaw did (or could) coerce him, and I think there are more credible reasons for his attempt to withdraw his plea than the existence of coercion.

My judgment of Bennett, based on the evidence I heard and the demeanor of those who presented it, is this:

Bennett has no active mental impairment. He is relatively intelligent, and he enjoys the battle which he is waging here. There is not much else to fill his days. I accept the

---

[4] Bennett's assertion about the threat to his sister did not appear in the long written statement which he read as his direct testimony.

6

proposition that his concern for Landaw motivated his plea, but not because Landaw coerced him. He plead because he owed it to Landaw for helping get him into trouble.[5] Indeed, once Landaw got the benefit of the bargain, Bennett had every reason to try to get out of his plea, and I find this the most credible explanation for his attempt to withdraw his plea. He had given away the break from prison boredom that comes with a trial and the outside chance that he could have the satisfaction of beating the government. He wanted those things back, and he thought he could have them without hurting Landaw, so he tried. I agree that it is more likely than not that the attempt to withdraw was hurried along by the fact that shortly after the plea, the Bureau of Prisons revoked his unsupervised privileges to use the phone. His calls were limited. Landaw did not threaten him with physical harm and, if he had, the threat would not have been credible to Bennett, at least, no more credible than the proposition that a shepard would find the bleating of an angry lamb to be threatening. Landaw is Bennett's friend and tried to help within the limits of his ability to do so–the limit being his unwillingness to confess to acts of coercion which would themselves constitute a crime.

I do not think that the investigation of Bennett's claim would have been any more favorable for Bennett if I had conducted it at the time of the plea. Bennett has had more time to develop his case. Landaw is in a better position to support his claim now than he would have been because Landaw can choose to keep the benefit of his plea. At the time

---

[5] Pleading guilty in order to secure a benefit for a third-party is both common and rational. See generally *Cortez v. United States*, 337 F.2d 699, 701-702 (9th Cir. 1964); *United States v. Marquez*, 909 F.2d 738, 741-742 (2nd Cir. 1990) (collecting cases); Jonathan Silbermann, "Connected Guilty Pleas: To Wire or Splice?" Prosecutor, November/December 1994, at 12-14 (collecting cases).

7

of the plea, Landaw would have an incentive to deny any hint of misconduct, and I know this is important to Landaw because of the way he avoided admitting having done anything really wrong to Bennett.

There is Bennett's testimony that his lawyer did not do an adequate job but that is not the subject of this motion. It is in Bennett's best interest that I do not decide it now. He might benefit from further research before he makes a claim, and he has a year after sentence to file under 28 U.S.C. § 2255.

Defendant Bennett's motion to withdraw his guilty plea is denied.

ENTER:

James B. Zagel
United States District Judge

DATE: JUL 24 2001